UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
LOWELL J. SIDNEY, individually and on
behalf of all others similarly situated,

                Plaintiffs,

                - against -

VERIZON COMMUNICATIONS AND CELLCO,
PARTNERSHIP d/b/a/ VERIZON WIRELESS
SERVICES LLC,

                Defendants.
----------------------------------------------------------- x

**MEMORANDUM & ORDER**

17 CV 1850 (RJD) (RLM)

DEARIE, District Judge

## I. OVERVIEW

This putative class action arises out of fraudulent purchase of a cell phone and service on plaintiff's cell phone account with defendants, Verizon Communications and Cellco, Partnership d/b/a/ Verizon Wireless Services LLC ("Verizon"). Plaintiff, Lowell J. Sidney, seeks to represent a class of individuals who he alleges were willfully and fraudulently over-charged by Verizon for services they did not agree to, receive, purchase, or use, and which were not part of their contracts for services with Verizon. Defendants move to stay the case and compel arbitration pursuant to an arbitration agreement between the parties. The Court finds that plaintiff's claims fall within the range of disputes contemplated by the parties' binding arbitration agreement; thus, defendants' motion to compel arbitration and stay the case is granted.

## II. BACKGROUND

Plaintiff activated a cell phone service account with Verizon on February 28, 2012. Verizon's account activation process includes the new customer's acceptance of the terms and conditions of Verizon's service agreement. A copy of the Verizon Wireless Customer Agreement

1

(the "Agreement") would typically be provided to the new customer during the activation process along with a Welcome Package. On March 2, 2012, Verizon provided plaintiff a letter confirming service activation and enclosed a copy of the Agreement.

The Agreement explicitly provides that disputes be resolved through arbitration.[1] It also requires that plaintiff pursue any disputes on an individual basis and includes a waiver of plaintiff's right to class action law suits.[2] The arbitration and class waiver provisions have their own dedicated section in the agreement: outlined with a border, distinct from the rest of the agreement, with text in all capitalized letters, some of which is in bold-face type. Plaintiff accepted the Agreement by activating and using his service. The Agreement preserved the option to cancel service within 14 days if plaintiff did not accept the Agreement. Not such cancellation occurred.

Upon upgrading his service over a year later, on May 16, 2013, plaintiff once again accepted Verizon's Agreement through defendants' telephonic service upgrade process. Def. Ex. D. In a letter dated March 19, 2013, Verizon confirmed Plaintiff's upgrade. Def. Ex. F. Plaintiff's Verizon service continued without incident until October 2016.

In October 2016 an unknown individual entered a Verizon Wireless store in Florida, and, impersonating the plaintiff, fraudulently added a second phone line to plaintiff's account. Plaintiff alleges that Verizon was aware of the fraud at that time and deliberately did not notify him. Plaintiff became aware of fraudulent activity in February 2017, when he contacted Verizon to inquire about his bill, which included the added phone line and associated costs. Verizon

---

[1] The Agreement requires arbitration of "ANY DISPUTE THAT IS ANY WAY RELATES TO OR ARISE OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT,PRODUCTS AND SERVICES YOU RECEIVE FROM US..." Def. Ex. C.
[2] The Agreement "DOESN'T ALLOW CALSS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PORCEDURES OR RULES WOULD." Def. Ex. C.

eventually confirmed that the charges were indeed fraudulent. On March 3, 2017, Verizon refunded the plaintiff for payments related to the fraudulent phone line. Plaintiff filed the instant case on April 3, 2017.

### III. DISCUSSION

*A. Applicable Law*

The Federal Arbitration Act ("FAA"), "establishes a federal policy favoring arbitration." In re Anderson, No. 16-2496, 2018 WL 1177227, at *3 (2d Cir. Mar. 7, 2018) (citing Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987)); Preston v. Ferrer, 552 U.S. 346, 349 (2008). Courts must compel arbitration "in accordance with the terms of an arbitration agreement, provided that there is no issue regarding its creation." Kutluka v. PQ New York Inc., 266 F. Supp. 3d 691, 699 (2017) (citing AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2)). The inquiry before the Court is two-fold: (1) did the parties enter into a valid agreement? and (2) is the dispute within the scope of the arbitration agreement? Id.; See also Sacchi v. Verizon Online LLC, No. 14-CV-423-RA, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) ("(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.") (quoting In re American Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2001)).

A motion to compel arbitration pursuant to the FAA is evaluated under a standard akin to the standard applicable for a motion for summary judgment. Nicosia v. Amazon.com, Inc., 834 F. 3d 220, 229 (2d Cir. 2016) (internal citations omitted); Meyer v. Uber Technologies, Inc, 868 F.3d 66, 74 (2017) . The Court "draws all reasonable inferences in favor of the non-moving party." Id.; Faggiano v. CVS Pharmacy, Inc., 283 F. Supp. 3d 33 (E.D.N.Y. 2017). Arbitration

3

agreements are considered contracts and "the ultimate question of whether the parties agreed to arbitrate is determined by state law." Kutluka, 266 F. Supp. 3d at 700 (citing Bell v. Cendant Corp., 293 F. 3d 563, 566 (2d Cir. 2002). Under New York law, to "create a binding contract,, there must be a meeting of the minds." Id. (quoting Highland HC, LLC v. Scott, 113 A.D.3d 590, 978 N.Y.S.2d 302, 306 (2d Dep't 2014)). "[A] party who executes a contract is considered bound by the terms of that contract." Id. (citing Stern v. Espeed, Inc., No. 06 Civ. 958 (PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006). Further, in "the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract...is conclusively presumed to know its contents and to assent to them." Id. (quoting Fleming v. J.Crew, No. 1:16-cv-2663-GHW, 2016 WL 6208570, *3 (S.D.N.Y. Oct. 21, 2016). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Id. (citing Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

If the Court finds that the claims are subject to a valid arbitration agreement and a stay is requested, the Second Circuit has held that a stay is mandatory. Katz v. Cellco Partnership, 794 F.3d 341, 346 (2d Cir. 2015) ("[A] mandatory stay is consistent with the FAA's underlying policy to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

### B. *Validity of the Arbitration Agreement*

The arbitration agreement between plaintiff and defendant is valid and enforceable. Plaintiff accepted the terms of the agreement on two separate occasions over his six years of

service with Verizon. Plaintiff first accepted the Agreement when initiating service and opening his Verizon account, and a second time when upgrading his account over a year later. There is no dispute that plaintiff accepted the contract's terms on each of those occasions.

Plaintiff presents no argument attacking the validity of the arbitration agreement. Though plaintiff does complain that the arbitration agreement and Verizon's alleged failure to notify its customers of fraudulent activity is unconscionable, he falls far short of succeeding on any legal argument of that kind. Indeed, there is nothing in the record, beyond plaintiff's allegations, to suggest that Verizon deliberately withheld information about fraud. More importantly, there is no evidence to suggest the Agreement was improper; the terms of Verizon service, especially the arbitration section, are conspicuous in the Agreement.[3] See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 243 (E.D.N.Y. 2004) (quoting Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 Civ. 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004)) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract.") (internal quotations and citations omitted).

Further, courts in this Circuit have enforced identical arbitration agreements. Verizon's specific arbitration agreement has been upheld numerous times as valid and enforceable. Id. (finding the Verizon Wireless agreement to arbitrate valid); Katz, 794 F.3d at 344 (finding that application of FAA to compel arbitration per Verizon's service agreement is constitutional); Schatz v. Cellco P'ship, 842 F. Supp. 2d 594, 597 (S.D.N.Y. 2012). "The Federal Arbitration Act says that an arbitration agreement 'shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*'" Concepcion, 563 U.S. at

---

[3] Moreover, plaintiff's unconscionability argument is not about the Agreement; it is about Verizon's supposed policy.

5

357 (citing 9 U.S.C. § 2). No such grounds exist here; thus, the arbitration agreement is valid and enforceable.

*C. Claims Fall Within the Scope of the Agreement*

Plaintiff points out that the fraudulent addition of a second phone line to his account created a distinct contract between Verizon and the fraudulent phantom individual, putting this conflict outside the scope of the arbitration agreement. Whatever the logic of this point, this dispute arises between plaintiff and Verizon, about a billing issue that plaintiff experienced—not any third party. Though the underlying problem involved a third party, the dispute itself remains a problem to be resolved by plaintiff and Verizon. Such a conflict is manifestly covered in the broad arbitration agreement to which plaintiff agreed. See Def. Ex. C. (requiring arbitration of "ANY DISPUTE THAT IS ANY WAY RELATES TO OR ARISE OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT,PRODUCTS AND SERVICES YOU RECEIVE FROM US…").

Broad arbitration agreements such as Verizon's are generally construed by courts to cover all claims arising from the customer's relationship with defendants. Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). "Broad arbitration clauses enjoy a presumption of arbitrability." Sacchi, 2015 WL 765940, at *9 (internal quotation omitted). There is no doubt that plaintiff's complaints regarding billing and services are clearly within the scope of Verizon's arbitration agreement.

Where the arbitration agreement is valid and enforceable, class action waivers in arbitration provisions are also enforceable. Concepcion, 563 U.S. at 344. Other courts, including the Supreme Court, have held that class action waivers such as Verizon's are permitted and

enforceable, and that a finding to the contrary would undermine the efficient dispute resolution goals underlying the FAA.[4] Id.; Sacchi, 2015 WL 765940, at *10; Litman v. Cellco P'ship, 655 F. 3d 225, 231 (3d Cir. 2011). There is no basis for plaintiff's contention that the class action waiver should not apply.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to compel arbitration and stay the case is granted.

SO ORDERED.

Dated: Brooklyn, New York

    March 2-1, 2018

                                                  s/ RJD

                                                  RAYMOND J. DEARIE

                                                  United States District Judge

---

[4] See Concepcion, 563 U.S. at 344 ("The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").